## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>DAVID GEORGE AKILLIAN,<br><br>      Debtor | Chapter 7<br>Case No. 09-17200 (JNF) |
| JOSEPH BRAUNSTEIN, CHAPTER 7<br>TRUSTEE OF THE ESTATE OF DAVID<br>GEORGE AKILLIAN,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL HAIG AKILLIAN,<br><br>      Defendant | Adversary Proceeding No. 09-01388 (JNF) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT, MICHAEL HAIG AKILLIAN

Within one year prior to filing bankruptcy, and at a time when he was insolvent, David Akillian transferred $71,142.45 to his brother, Michael Haig Akillian (hereinafter, "Akillian"). The Chapter 7 Trustee commenced this action to recover, as fraudulent, the Debtor's transfer of funds for the benefit of the Debtor's estate, or in the alternative, to recover the funds as a preferential transfer. The Chapter 7 Trustee is seeking to recover the transfer because the Debtor received no consideration in exchange therefore, and because the Transfer was made at a time when the Debtor was insolvent or as the transfer rendered the Debtor insolvent, and was made at a time when the Debtor knew or reasonably should have known that he would incur debts beyond his ability to pay as they became due. As there are no genuine issues of material fact in dispute, the Chapter 7 Trustee is entitled to summary judgment as a matter of law.

## CONCISE STATEMENT OF MATERIAL FACTS

The following Statement of Undisputed Material Facts is made pursuant to Local

Bankruptcy Rule 7056-1, which adopts and makes applicable to this proceeding Rule 56.1 of the

Local Rules of the United States District Court for the District of Massachusetts.

### Background

1.      The Plaintiff, Joseph Braunstein (the "Chapter 7 Trustee"), is the Chapter 7

Trustee in Bankruptcy for the Debtor, David George Akillian (the "Debtor"), with a place of

business situated at Three Center Plaza, Boston, Massachusetts.

2.      The Defendant, Michael Haig Akillian ("Akillian"), is an individual with a usual

place of abode situated at 10 Mt. Vernon Road, Amherst, New Hampshire 03031.

### The Trust

3.      The Debtor and Akillian, brothers, were the beneficiaries of a realty trust known

as the Ceil and Red Realty Trust, u/d/t April 8, 1983 (the "Trust") and recorded at the Middlesex

South District Land Court as Document 637548.  See Trust.  [The Trust is annexed as **Exhibit A**

to the Affidavit of Counsel Authenticating Documents ("Counsel Aff.") filed herewith].

4.      Celia and George Akillian, the parents of the Debtor and Akillian, were the

named trustees of the Trust.  See Counsel Aff., **Exhibit A** (Trust).

5.      The Trust was the record owner of certain real property situated at 1-3 Howe

Street, Watertown, Massachusetts (the "Property").   See Plaintiff's Complaint (the

"Complaint"), ¶8; Defendant's Answer to Complaint (the "Answer"), ¶8.

6.      The Trust provided, *inter alia*, that:

> The income of the Trust, or the use of the Trust property, or such
> part thereof as the Trustees may deem advisable and such part or
> parts of the principal of the Trust as the Trustees may deem

2

advisable shall from time to time at such intervals as the Trustees may deem advisable be paid or used and expended for the support, maintenance, or other needs of the Donors' children, MICHAEL HAIG AKILLIAN, of Bedford, Massachusetts and DAVID GEORGE AKILLIAN, of Arlington, said Massachusetts, the beneficiaries hereof, in such amounts as the Trustees shall deem proper and advisable.

See Counsel Aff., **Exhibit A** (Trust at ¶ 8).

7.      George Akillian died on August 28, 1991, leaving Celia Akillian as the sole trustee of the Trust. See Land Court Order. [The Land Court Order is annexed as **Exhibit B** to the Counsel Aff." filed herewith].

**The Transfer**

8.      Celia Akillian, the remaining Trustee of the Trust, died on March 4, 2006. See Complaint, ¶10; Answer, ¶10.

9.      The Trust provided, *inter alia*, that upon the death of the last trustee, all assets of the Trust would be transferred to the beneficiaries in "equal shares, share and share alike." See Counsel Aff., **Exhibit A** (Trust ¶ 10).

10.     As of August 1, 2008, the beneficiaries of the Trust were the Debtor and Akillian. Complaint, ¶8; Answer, ¶8; Counsel Aff., **Exhibit A** (Trust).

11.     On July 24, 2008, the Land Court ordered the entry of a new Certificate of Title for the Property in the names of the Debtor and Akillian. See Counsel Aff., **Exhibit B** (Land Court Order).

12.     On August 1, 2008, the Debtor and Akillian sold the Property for the stated consideration of $505,500.00 (the "Closing"). Complaint, ¶12; Answer, ¶12; HUD Settlement

3

Statement. [The HUD Settlement Statement is annexed as **Exhibit C** to the "Counsel Aff." filed herewith].

13.     The net proceeds from the sale of the Property totaled $330,996.43.  Complaint, ¶15; Answer, ¶15; Counsel Aff., **Exhibit C** (HUD Settlement Statement).

14.     Pursuant to the terms of the Trust, the net proceeds from the sale were to be divided "share and share alike" between the Debtor and Akillian, or $165,498.21 each.  Counsel Aff., **Exhibit A** (Trust at ¶ 10).

15.     Instead, Akillian received $236,640.67 from the sale proceeds, whereas the Debtor received only $94,355.76.  See Complaint, ¶16; Answer, ¶16; Akillian Check dated 8/1/08; Debtor Check dated 8/1/08.  [The Akillian Check dated 8/1/08 is annexed as **Exhibit D** to the Counsel Aff. filed herewith and the Debtor Check dated 8/1/08 is annexed as **Exhibit E** to the Counsel Aff. filed herewith].

16.     Accordingly, Akillian received $71,142.45 of proceeds (the "Transfer") which should have been paid to the Debtor pursuant to the terms of the Trust.  See Counsel Aff., **Exhibit A** (Trust at ¶ 8).

**The Debtor's Insolvency**

17.     At the time of the Transfer to Akillian, the Debtor was insolvent or was rendered insolvent as a result.  See Debtor's Schedules dated 7/30/2009; and Debtor's Amended Schedules dated 10/06/2009.  The Debtor's Schedules dated 7/30/2009 are annexed as **Exhibit F** to the Counsel Aff. filed herewith; the Debtor's Amended Schedules dated 10/06/2009 are annexed as **Exhibit G** to the Counsel Aff. filed herewith; Debtor's Watertown Savings Bank statements for July, 2008 through April 2009 are annexed as **Exhibit K, L** and **M** to the Counsel Aff.

4

18.     The Debtor certified in his Statement of Financial Affairs that he did not make any gifts or transfers in the year prior to filing.  See Counsel Aff. at **Exhibit G** (Debtor's Amended Schedules).  Furthermore, the Debtor certified that he had did not close any financial accounts within one year prior to filing.  See Id.

## ARGUMENT AND AUTHORITIES

**I.     Standard for Summary Judgment**

Federal Rule of Civil Procedure 56 governing summary judgment is made applicable to this proceeding by operation of Federal Rule of Bankruptcy Procedure 7056, and provides that a party may move for summary judgment at any time twenty (20) days subsequent to the commencement of any action.  Fed.R.Civ.P. 56.  Summary judgment is an appropriate remedy when the moving party demonstrates that the pleadings and/or any discovery submitted in the case tend to prove the absence of a genuine dispute of any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To succeed on a summary judgment motion, the moving party meets his burden by a mere "'showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case.'"  U.S. Trust Co. v. Raritan River Steel Co. (In re Am. Spring Bed Mfg. Co.), 153 B.R. 365, 371 (Bankr. D. Mass. 1993) *quoting* Celotex Corp., 477 U.S. at 325.

While the moving party must sustain its initial burden, no requirement exists for the moving party to support its motion for summary judgment with evidence tending to disprove the opposing party's claim.  Celotex Corp., 477 U.S. at 323.  Conversely, once the moving party has met its burden under Rule 56, the nonmoving party may only defeat summary judgment by producing substantial evidence that a genuine dispute exists as to a material fact.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975).  "A material issue is one which affects the outcome of

the litigation.  To be considered 'genuine' for Rule 56 purposes a material issue must be established by 'sufficient evidence supporting the claimed factual dispute…to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461,464 (1st Cir. 1975) *quoting* First National Bank of Arizona v. Cities Service Co. Inc., 391 U.S. 253, 289 (1968).

## II.   The Trustee has Sustained His Burden of Proof as to His Fraudulent Transfer Claim.

The Trustee claims that the Transfer of $71,142.45 was fraudulent as to the Debtor's creditors pursuant to 11 U.S.C. §548.  Under §548(a)(1), a transfer of property of an interest of a debtor made within 2 years of the bankruptcy filing is fraudulent and may be avoided by a trustee, if (i) the transfer was made with the actual intent to hinder, delay or defraud the debtor's creditors (then existing or thereafter arising), or (ii) the debtor received less than a reasonably equivalent value in exchange for the transfer, and the Debtor:

- Was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; or
- Intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

§548(a)(1)(B)(II).  As established below, there are no genuine issues of material fact as to the necessary elements of the Trustee's claims.  Accordingly, summary judgment in the Trustee's favor on Count I of the Complaint is proper as a matter of law.

### 1.   Reach Back Period and Property of the Debtor

The Transfer was made on August 1, 2008; the Debtor filed for relief on July 30, 2009. Accordingly, the statutory reach back period set forth in 548(a)(1) of "within two (2) years" has been established.

2.    **Reasonably Equivalent Value Not Exchanged**

Section 548 §(d)(2)(A) defines "value" as property, or satisfaction or securing of a

present or antecedent debt of the debtor . . ." Whether reasonably equivalent value has been

exchanged for a transfer "depends on all of the circumstances surrounding the transaction".

Colliers, Volume 5, §548.05.

Prior to the Transfer, the Property was held in the name of the Trust with the Debtor and

Akillian as equal beneficiaries with equal shares. See Complaint, ¶7; Answer, ¶7. It is

undisputed that as of August 1, 2008, the beneficiaries of the Trust were the Debtor and Akillian.

Complaint, ¶8 Answer, ¶8. As beneficiaries of the Trust, Akillian and the Debtor were entitled

to equal shares of all assets of the Trust upon the death of the last Trustee. See Counsel Aff.,

Exhibit B (Trust, ¶ 10). Celia Akillian, the remaining Trustee of the Trust (the "Trustee") died on

March 4, 2006. See Complaint, ¶10; Answer, ¶10. On July 24, 2008, the Land Court ordered

the entry of a new Certificate of Title for the Property in the names of the Debtor and Akillian.

See Counsel Aff., **Exhibit B** (Land Court Order). On August 1, 2008, the Debtor and Akillian

sold the Property for $505,500.00. The net proceeds from the sale of the Property totaled

$330,996.43. See Counsel Aff., **Exhibit C** (HUD Settlement Statement).

Pursuant to the terms of the Trust, the net proceeds from the sale *should have* been

divided "share and share alike" between the Debtor and Akillian, or $165,498.21 each. Instead,

Akillian received $236,640.67 from the sale proceeds, whereas the Debtor received only

$94,355.76. See Counsel Aff., **Exhibit D** (Akillian Check dated 8/1/08); Counsel Aff., **Exhibit

E** (Debtor Check dated 8/1/08). Thus, Akillian received $71,142.45 of proceeds which should

have been paid to the Debtor pursuant to the terms of the Trust. See Counsel Aff., **Exhibit A**

(Trust at ¶ 8).

As discussed, upon the sale of the Trust property, Akillian received $71,142.45 of proceeds that the Debtor was entitled to under the terms of the Trust. The Debtor's payment to Akillian was transferred without consideration and for no additional value. Thus, the Transfer cannot meet the standard of "reasonably equivalent value".

### 3. The Debtor's Insolvency

The definition of insolvency in the Bankruptcy Code is defined as the financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title [11 USCS § 522]. 11 U.S.C. § 101(32)(A). It is the Trustee's burden to establish that the Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer. Courts may consider a Debtor's Schedules when making a finding of insolvency. In re Walsh, 2010 Bankr. LEXIS 2106 (Bankr. D. Mass. 2010) (Stating that "in view of the Debtor's Schedules, the Court has been presented with compelling evidence that the Debtor was insolvent.").

### a. Assets

The Debtor's Schedules filed on July 30, 2009 (which were later amended) listed a total of $28,718.00 of total assets. See Counsel Aff. at **Exhibit F** (Debtor's Schedules). On October 6, 2009, the Debtor amended his schedules to reflect $74,756.00 of assets. See Debtor's Amended Schedules. [A true and accurate copy of the Debtor's Schedules is attached to the Counsel Aff. at **Exhibit G**]. All of the Debtor's property listed in his Amended Schedules was claimed as exempt under § 522(b)(2), and is therefore excluded from the calculation of assets for the purpose of determining the Debtor's solvency. See Counsel Aff. at **Exhibit F** (Debtor's

8

Amended Schedules); 11 U.S.C. § 101(32)(A); Murphy v. Walsh (In re Walsh), 2010 Bankr.

LEXIS 2106 at *26 (Bankr. D. Mass. June 24, 2010) (noting that exempt assets are not

considered for purposes of determining insolvency). Thus, at least according to the Debtor's

Amended Schedules, the Debtor had no assets at the time of filing for the purpose of the

insolvency analysis. See Counsel Aff. at **Exhibit F** (Debtor's Amended Schedules).

The First Circuit has repeatedly approved the use of retrojection to prove insolvency at

the time of a transfer where it can be shown that no substantial change in the asset and liability

structure of the debtor occurred between the two relevant dates. In re Oliver, 38 B.R. 407, 412

(Bankr. D. Mass. 1984) *citing* Braunstein v. Massachusetts Bank & Trust Co., 443 F.2d 1281

(1st Cir. 1971); Hassan v. Middlesex County National Bank, 333 F.2d 838 (1st Cir.), cert.

denied, 379 U.S. 932, (1964); J. Ochoa & Hermano v. Perez Blanco, 15 F.2d 618 (1st Cir. 1926);

In re Arrowhead Gardens, Inc., 32 B.R. 296 (Bankr. D. Mass. 1983); In re Morton Shoe

Companies, 24 B.R. 1003 (Bankr. D. Mass. 1982); and In re Hause, 13 B.R. 75, aff'd on other

grounds, 694 F.2d 861 (1st Cir. 1982) (Bankr. D. Mass. 1981). See also Haynes & Hubbard, Inc.

v. Stewart, 387 F.2d 906 (5th Cir. 1967) and In re Randall Construction, Inc., 20 B.R. 179

(Bankr. N.D. Ohio 1981). Where the Debtor's Schedules and Statement of Affairs show the

Debtor to be insolvent at the time the petition was filed, the Court may find for the Trustee on the

issue of insolvency if the Debtor's circumstances had not changed. In re Oliver, 38 B.R. 407,

412 (Bankr. D. Mass. 1984).

Here, the Debtor certified in his Statement of Financial Affairs that he did not make any

gifts or transfers in the year prior to filing. See Counsel Aff. at **Exhibit G** (Debtor's Amended

Schedules). Furthermore, the Debtor certified that he had not closed any financial accounts

within the year prior to filing. See Id. Thus, the value of the Debtor's assets at the time of the

Transfer did not change from the time of the transfer to the petition date.

### b.    *Liabilities*

In contrast, the Debtor's Schedules disclosed 69,854.72 of unsecured liabilities, with

credit card debt totaling $47,859.00 and a secured car loan totaling $3,253.00. On his original

Schedule D, the Debtor indicates that the secured car loan originated in August of 2005. See

Counsel Aff. at **Exhibit F** (Debtor's Schedules). And on his original Schedule F, the Debtor lists

the dates on which many of his unsecured liabilities began accruing.[1] See Counsel Aff. at

**Exhibit F** (Debtor's Schedules). The Debtor indicated that $46,404.00 of credit card debt was

incurred "over the last six years" and $1,454.00 was incurred over the last "fourteen years." See

Counsel Aff. at **Exhibit F** (Debtor's Schedules). Thus, under a straight asset versus liability test,

the Debtor is clearly insolvent.

### c.    *Income and Expenses*

In his Schedules, the Debtor listed his income as $2,056.37 and his expenses as

$2,781.00, resulting in a monthly deficit of $725.00. See Counsel Aff. at **Exhibit G** (Debtor's

Amended Schedules). The Debtor's Schedules also reflect that prior to the petition date, his

expenses had been reduced by $918.99 as he had "moved to a smaller apartment to reduce

expenses." See Counsel Aff. at **Exhibit F** (Debtor's Schedules at Schedule J).

The Debtor's Bank statements furnished to the Trustee further evidence his insolvency.

See Counsel Aff., at **Exhibit K, L** and **M** (Debtor's Bank Statements). Prior to the Transfer, the

---

[1] The Debtor's Amended Schedules are silent as to the dates on which the Debtor's liabilities were incurred. The
Trustee thus relies on the dates provided by the Debtor in his original Schedules, which is appropriate given the
silence in the Amended Schedules with regard to dates and the fact that the credit card debt itemized remains
essentially the same

Debtor had just $1,940.94 in his checking account. The Debtor's share of the sale proceeds were

thereafter deposited, and with same, the Debtor paid off some of his substantial credit card debt,

but clearly not enough to keep him out of bankruptcy. Indeed, in July 2008 the month the sale

proceeds were received, the Debtor paid over $18,000.00 in past due credit card debts to

American Express, Chase, and others. In August of 2008, the same amount ($18,000.00) was

again paid to past due credit card debt. See Counsel Aff., Exhibit K (Debtor's Bank Statements).

Indeed, the Debtor's expenses in August, 2008, the month following the Transfer, exceeded by

over $19,000.00 his income; and similarly exceeded his income for the following several months

until in December 2008, the proceeds from the sale had been depleted and the Debtor took a

$10,000.00 cash advance from American Express to replenish his checking account. See,

Counsel Aff., **Exhibit L** (Debtor's December, 2008 Bank Statement). By March of 2009, the

Debtor was borrowing money from friends in order to get by. See, Counsel Aff., **Exhibit M**

(Debtor's Bank Statements, March 2009 and April 2009). While it is inarguable that the Debtor

did have an income stream, his expenses indisputably exceeded his income, and he was thus

insolvent on all accounts. As is clearly reflected by the Debtor's bank statements and his

Schedules, the Debtor could not pay his bills as they became due, highlighted by the

undisputable evidence that he had almost $50,000.00 in credit card debt which had been

lingering over the last six to fourteen years.

### d.      *Transfer Rendered the Debtor Insolvent*

Even if the Debtor were not found to be insolvent at the time of the Transfer, the Transfer

to Akillian rendered him insolvent as that amount alone would have paid nearly all of his credit

card debt, which given that it was virtually his only debt, caused the Debtor's bankruptcy.

Turning again to his bank statements, the Debtor had virtually no cash to his name before the

Transfer, and while the sale proceeds helped his plight somewhat, same were quickly depleted thereby forcing the Debtor to seek cash advances on his credit card.  See, Counsel Aff., **Exhibit L** (Bank Statement December, 2010)  Accordingly, the Trustee met his burden with respect to establishing the Debtor's insolvency, and Akillian will be unable to establish any evidence to the contrary.  11 U.S.C. §548(a)(1)(B)(II).  Indeed, Akillian admits in his Answer to the Complaint, his Answers to Interrogatories, and his Document Responses that he has no knowledge concerning the Debtor's solvency, no documents to establish the Debtor's solvency and no evidence to rebut a finding of insolvency upon submission by the Trustee of proof thereof.  See Defendant's Answer; Defendant's Answer to the Plaintiff's Request for Interrogatories at ¶ 23, [A true and accurate copy of which is attached to the Counsel Affidavit as **Exhibit H**]; Defendant's Answer to the Plaintiff's Request for Documents at ¶ 23, 24. [A true and accurate copy of which is attached to the Counsel Affidavit as **Exhibit I**].  Akillian admits that the Debtor's financial condition was problematic since at least "a number of years ago" and that "money was always an issue for him [which is the way it's been] for a number of years." Deposition Testimony of Michael Haig Akillian at 12 ("Akillian Depo.") [Akillian Depo. is annexed as **Exhibit J** to the Counsel Aff. filed herewith].

As there are no genuine issues of material fact that (1) reasonable consideration was not exchanged for the Transfer, (2) the Debtor had an interest in the Property, and (3) the Debtor was insolvent or rendered insolvent as a result of the Transfer, there is a conclusive presumption of fraud.  In re Realsite, Inc., 256 F. Supp. 322 (S.D. Fla 1966).  Accordingly, the Transfer to Akillian was a fraudulent transfer pursuant to 11 U.S.C. Section 548, which is avoidable pursuant to 11 U.S.C. Section 550.

### 4. **Akillian's Affirmative Defenses**

In his Defense, Akillian claims that his mother, Celia Akillian, granted a mortgage on the Property in 2001, and subsequently refinanced the mortgage with the advancement of additional funds in 2004, the proceeds of which, he claims were paid to the Debtor. Akillian claims that the Debtor and his mother had orally agreed that payment of the Mortgage proceeds to the Debtor would constitute advances of the Debtor's share of Trust property, which would be repaid to Akillian when the Property was ultimately sold. Akillian argues that he received the lion's share of the sale proceeds because the Debtor received the funds through the Mortgage. Thus, he argues that reasonable equivalent value was exchanged. Notably, Akillian has no evidence to establish that the Debtor actually received any mortgage proceeds or that the Debtor was ever liable for the Mortgages[2], and indeed, Akillian never knew about this alleged oral agreement until after the "advances" were made. Other than Akillian's self-serving testimony, there is no evidence in support of this oral agreement which is, in any event, contrary to the terms of the written Trust agreement and unenforceable for the reasons discussed herein. Accordingly, Akillian's defense fails and summary judgment must enter in favor of the Chapter 7 Trustee as a matter of law.

### a. **Any Oral Agreement would be Unenforceable as the Trust cannot be Modified by an Oral Agreement**

Assuming for the purpose of Summary Judgment only that the Debtor and Celia Akillian did enter into the alleged oral agreement, such agreement is void and unenforceable.

---

[2] Indeed, the Debtor did not execute either Mortgage nor was he an obligor under the accompanying notes.

*i. Extrinsic Evidence is Inadmissible*

Akillian's argument first fails because the alleged agreement is contrary to the terms of

the Trust.  When a trust is created by an inter vivos transaction and is evidenced by a written

instrument, the terms of the trust are determined by the provisions of the instrument as

interpreted in light of all the circumstances.  Other evidence including the intention of the settlor

is not admissible.  See *Restatement 2d Trusts*, § 4, Terms of the Trust.  Under the parole

evidence rule, "where the manifestation of intention of the settlor is integrated in a writing, that

is, where a written instrument is adopted by the settlor as the complete expression of his

intentions, extrinsic evidence, in the absence of fraud, duress, mistake, or other grounds for

reformation or rescission, is not admissible to contradict or vary it".  Burke v. Dolan, 1993 Mass.

Super. LEXIS 95 (Mass. Super. Ct. Nov. 23, 1993); citing *Restatement 2d Trusts*, 38 Comment.

The Trust is a fully integrated document which specifically states:

> All acts done, and all deeds, drafts, notes or checks or other
> instruments executed by the Trustees in behalf of the Trust shall be
> conclusive evidence of authority to do and execute same and shall
> be binding upon Trust, and all conveyances shall transfer a full and
> complete title discharged of Trusts, unless therein otherwise
> stipulated.

See Counsel Aff., **Exhibit A** (Trust at ¶ 6).  In this case, the Trustee did not make any written

modifications to the Trust.  Even if the funds from the Mortgage were used for Debtor's benefit,

which the Chapter 7 Trustee does not concede, the Trustee would have merely been acting in

accordance with the language of the Trust which specifically allowed for the use of Trust

property for the maintenance and support of the Trust beneficiaries.  See Counsel Aff., **Exhibit

A** (Trust at ¶ 8).  The Trust also states that the beneficiaries of the Trust do not have the power to

"anticipate, assign, transfer, alienate or in any way pledge or hypothecate his or her respective

14

interest in this Trust, or any part thereof, and any attempt to do so shall be of no effect.  See Counsel Aff., **Exhibit A** (Trust at ¶ 11).  Moreover, Paragraph 10 specifically provides for equal distribution of the Trust property at the death of the last Trustee.  See Counsel Aff., **Exhibit A** (Trust at ¶ 10).  As the provisions of the Trust determine its terms as a matter of law, any allegations of an oral agreement to the contrary may not be introduced to contradict its written provisions.  See Counsel Aff., **Exhibit A** (Trust at ¶ 10); Burke, 1993 Mass. Super. LEXIS 95; *Restatement 2d Trusts*, § 4.

### ii. The Trust Requires Any Modifications to be in Writing

Akillian's argument that an oral agreement between the Debtor and the Trustee modified the express terms of the Trust also fails as it is hornbook law that a valid trust, once created, cannot be revoked or altered except by the reserved power to do so, which must be exercised in strict conformity to its terms.  Bongaards v. Millen, 440 Mass 10 (2003); Gallello v. Gallello, 76 Mass. App. Ct. 1119 (2010) (Trustees may not waive formalities necessary to amend trust, thus any attempt to do so is invalid); Leahy v. Old Colony Trust Co., 326 Mass 49 (1950) (a trust cannot be altered or revoked by settlor except in accordance with power to do so reserved in trust instrument); Dewey v. State Tax Commission, 346 Mass. 43 (1963) (oral agreement did not modify a trust where the Trust provided that all amendments must be written).  Where a trust instrument explicitly provides for a power and method of modification, that power must be exercised in strict conformity with its terms.  Kirschbaum v. Wennett, 60 Mass. App. Ct. 807 (2004).

In this case, the Trust provides for a specific manner in which the Trust must be amended, if at all.  The Trust provides that an amendment must be recorded in the Middlesex County South District Registry of Deeds, Cambridge, Massachusetts.  See Counsel Aff., **Exhibit**

A (Trust at p. 1). While Celia Akillian had the power to modify the Trust pursuant to its specific

provisions, no such amendment or alteration was filed with the Registry of Deeds. Because the

Trust does not specifically allow the Trust to be orally amended, any attempt to make such a

modification is invalid. Accordingly, the argument that the oral agreement modified the Trust

fails as a matter of law.

### iii. *Oral Agreements Pertaining to Hereditaments and Interest in Land are barred by the Statute of Frauds*

M.G.L. c. 259, § 1, the Massachusetts Statute of Frauds, provides that all agreements

involving the "sale of lands, tenements or hereditaments or of any interest in or concerning

them" must be signed and in writing. A hereditament is defined by Black's Law Dictionary as

"any property that can be inherited; anything that passes by intestacy." In Kirschbaum v.

Wennett, the Court held that an alleged oral agreement regarding an interest in a trust violated

the Statue of Frauds. Kirshcbaum v. Wennett, 60 Mass. App. Ct. 807 (2004). The Appeals

Court ruled against the Settlor's stepdaughter where she failed to establish her entitlement to

25% of the trust on the basis of an alleged oral agreement between the settlor and his wife to

make the stepdaughter an irrevocable 25%, beneficiary as there was no evidence of such an

agreement, it was contrary to a written agreement, and the alleged agreement would have

nevertheless been unenforceable under the statute of frauds. Kirshcbaum, 60 Mass. App. Ct. at

809. Here, the alleged oral agreement concerns the distribution of Trust property to the

beneficiaries of the Trust upon the death of the last Trustee. Accordingly, it is an agreement

which affects the Debtor's interest in a hereditament. The alleged oral agreement would thus

violate the statue of frauds and be unenforceable. Thus, Akillian's argument that reasonably

equivalent value was exchanged fails.

**b.    There is No Evidence that the Transfer was a Result of the Alleged Oral Agreement**

Akillian admits in his deposition that he was not aware of the alleged oral agreement until a conversation where his brother, the Debtor, mentioned the Mortgage on the Property. See Counsel Aff. at **Exhibit J** (Akillian Depo. at p. 14-20). Akillian allegedly questioned his mother and she reluctantly admitted to taking out the Mortgage. Id. Akillian stated, "so they kind of shared it in the phone conversation and it was in that phone conversation that we said, okay, he's taking his portion of this house early. It's going to come from his share, you know, when and if we sell the house, and they both said absolutely." Id. at 18. Akillian has failed to provide any documents to provide evidence of the alleged agreement.

As Akillian cannot provide evidence that an oral agreement was entered into, the Transfer cannot be considered an advancement of the Debtor's interest in the Trust pursuant to such alleged agreement.

**c.    Akillian Cannot Explain $30,000.00 Missing Which He Claims Makes Up a Portion of the Reasonably Equivalent Value Allegedly Exchanged**

While Akillian argues that the Debtor received the full amount of the funds from the first Mortgage in the amount of $83,000.00, there is no evidence that the Debtor received $83,000.00. The largest deposit into the Debtor's account shown on the account statements Akillian produced was $53,000.00. Even if this deposit did come from proceeds of the Mortgage, a fact which the Chapter 7 Trustee does not concede, Akillian has provided no explanation for the additional $30,000.00 advanced under the mortgage, which in all likelihood went directly to Celia Akillian. Counsel Aff., at **Exhibit J** (Akillian Depo. at 34-35.)

> Q:    And do you have any ... knowledge as to the balance of the $30,000?
> A:    No.

> Q:    And do you know that your mother didn't receive that
>       $30,000?
> A:    I don't believe my mother received anything from either of
>       those mortgages.

Id. As such, even if the Court found the oral agreement to be enforceable, which it is not, the

Chapter 7 Trustee would still be entitled to recovery of $30,000.00 as Akillian cannot establish

that the Debtor received this sum at any point prior to filing bankruptcy. In other words, even

should the Court conclude that some "value" was received for the Transfer, said "value" would

be short $30,000.00—clearly not reasonably equivalent value.

**III.    The Chapter 7 Trustee has Established his Prima Facie Case that the Transfer of
the Property was Avoidable as a Preference Pursuant to U.S.C. §547**

To the extent Akillian argues that the Transfer (in whole or in part) was made in

repayment of the Debtor's "indebtedness" to him based upon advances by the Trust, said

Transfer would nevertheless be recoverable by the Chapter 7 Trustee as an avoidable preference.

To prevail on a claim under 11 U.S.C. §547, the Chapter 7 Trustee must show that there was a

transfer of an interest of the Debtor in property (1) to or for the benefit of a creditor; (2) for or on

account of an antecedent debt owed by the Debtor before the transfer was made; (3) made while

the Debtor was insolvent; (4) made within ninety days before the date of the filing of the petition,

or between ninety days and one year before the date of the filing of the petition, if such creditor

at the time of such transfer was an insider; and (5) that enables such creditor to receive more than

he would have had the Transfer not been made. 11 U.S.C. §547. Here, the Chapter 7 Trustee

has satisfied all of the elements to recover under Section 547 of the Bankruptcy Code.

First, the facts are undisputed that property of the Debtor, i.e., the proceeds of the sale of

the Property, was transferred to Akillian, an insider, within a year prior to the petition date.

Next, Akillian has claimed that the Property was transferred to satisfy a loan (antecedent debt)

18

the Trust allegedly made to the Debtor by virtue of the Mortgage. Counsel Aff., **Exhibit J**

(Akillian Depo at p. 15; 43-45). As set forth above, the Debtor's insolvency at the time of the

Transfer has been established, and as a result of the Transfer, Akillian received $71,142.45 more

than he would have received had the Transfer not been made and far more than he would have

received as an unsecured creditor in a Chapter 7 liquidation. Finally, as discussed above,

Akillian was an "insider" of the Debtor as that term is defined by 11 U.S.C. §101(31). Under the

Bankruptcy Code a "relative" of a debtor is an insider. 11 U.S.C. § 101(31)(A)(i).

Here, the relationship between Akillian and the Debtor fits squarely within the statutory

definition of insider. Moreover, as the Transfer was not arm's length, this Court must conclude

insider status as between Akillian and the Debtor. As there are no genuine issues of material fact

that (1) the Debtor transferred his interest in the Property, (2) to his brother Akillian, (3) for or on

account of an antecedent debt owed by the Debtor before the transfer was made, (4) made while

the Debtor was insolvent, (4) between ninety days and one year before the date of the filing of

the petition, which (5) that enabled Akillian to receive more than he would have had the Transfer

not been made, the Transfer to Akillian was a preferential transfer pursuant to 11 U.S.C. Section

547, which is avoidable pursuant to 11 U.S.C. Section 550. See *infra*.

Akillian's only Affirmative Defense to the Preference claim is that he is not a creditor of

the Debtor. See Defendant's Answer. Akillian may not have it both ways. As discussed above,

Akillian alleged that based on an oral agreement the Debtor's interest was "advanced" from his

interest in the Trust. If the Court were to agree with Akillian that the oral agreement was

enforceable, which it is not, and found that the Debtor took the Mortgagee proceeds pursuant to

such an agreement, the Court must find that Akillian was a creditor of the Debtor. Thus, as a

matter of law, Akillian's unsupported Affirmative Defense must fail.

**III.**    **The Chapter 7 Trustee's Right to Recover Value of Transfer Under 11 U.S.C. § 550**

Having established his right to recover under both 11 U.S.C. §§ 547 and 548 as a matter of law, the Chapter 7 Trustee may recover $71,142.45 from Akillian pursuant to 11 U.S.C. § 550 for the benefit of the Debtor's Estate.

## CONCLUSION

Accordingly, $71,142.45 must be returned to the Debtor's estate for distribution among all of his creditors, equally.  As there are no genuine issues of material fact in dispute, summary judgment in favor of the Chapter 7 Trustee on his claims against Akillian is appropriate.

Respectfully submitted,

JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE IN BANKRUPTCY FOR DAVID
GEORGE AKILLIAN,

By his Attorneys,
RIEMER & BRAUNSTEIN LLP,

Dated:  August 13, 2010

_/s/  Steffani Jill Boudreau_
Steffani Jill Boudreau, BBO No. 564967
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
sboudreau@riemerlaw.com

20

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>DAVID GEORGE AKILLIAN,<br><br>       Debtor | Chapter 7<br>Case No. 09-17200 (JNF) |
| JOSEPH BRAUNSTEIN, CHAPTER 7<br>TRUSTEE OF THE ESTATE OF DAVID<br>GEORGE AKILLIAN,<br><br>       Plaintiff,<br><br>v.<br><br>MICHAEL HAIG AKILLIAN,<br><br>       Defendant | Adversary Proceeding No. 09-01388 (JNF) |

## CERTIFICATE OF SERVICE

I, Steffani Jill Boudreau, of the law firm of Riemer & Braunstein LLP, hereby certify that on this 13 day of August, 2010, I caused to be served a true and accurate copy of the *Memorandum Of Law In Support Of Plaintiff's Motion For Summary Judgment Against Defendant, Michael Haig Akillian* by causing a copy of same to be delivered by electronic notice, to:

    Gary W. Cruickshank, Esquire
    Law Office of Gary W. Cruickshank
    21 Custom House Street, Suite 920
    Boston, Massachusetts  02110


                        */s/  Steffani Jill Boudreau*
                        Steffani Jill Boudreau, BBO No. 564967
                        Riemer & Braunstein LLP
                        Three Center Plaza
                        Boston, Massachusetts 02108
                        (617) 523-9000
                        sboudreau@riemerlaw.com

1228828.3