# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DAVID GEORGE AKILLIAN**                    Chapter 7
    Debtor                    Case No. 09-17200-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE OF THE ESTATE OF DAVID
GEORGE AKILLIAN,**
    Plaintiff
v.                                        Adv. P. No. 09-1388
**MICHAEL HAIG AKILLIAN,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by Joseph

Braunstein, the Chapter 7 Trustee (the "Trustee") of the estate of David George Akillian

(the "Debtor" or "George").  The Defendant, Michael Haig Akillian, the Debtor's brother

(the "Defendant" or "Michael"), filed an Objection to the Trustee's Motion.  Both parties

1

supported their positions with Memoranda and affidavits.  The Court heard the matter on February 15, 2011 and directed the parties to file supplemental briefs by March 11, 2011. The parties have complied with the Court's order.

The issues presented are whether the Chapter 7 Trustee sustained his burden of demonstrating the absence of genuine issues of material fact with respect to his two count Complaint pursuant to which he seeks to recover the sum of $71,142.45 from the Defendant as either a constructively fraudulent transfer under 11 U.S.C. § 548 or as a preference under 11 U.S.C. § 547(b).  For the reasons set forth below, the Court shall enter an order granting the Trustee's Motion with respect to Count I and denying the Motion with respect to Count II.

## II. FACTS

The Court finds that the following facts are undisputed.

The Debtor filed a voluntary Chapter 7 petition on July 30, 2009.  The Trustee commenced the above-captioned adversary proceeding against Michael on December 16, 2009.

The Debtor and Michael are brothers and were the beneficiaries of a nominee realty trust known as the Celia and Red Realty Trust, u/d/t April 8, 1983 (the "Trust") and recorded at the Middlesex South District Land Court as Document 637548.  Celia and George Akillian, the parents of the Debtor and Michael, were the trustees of the Trust.  The Trust was the record owner of real property located at 1-3 Howe Street, Watertown, Massachusetts (the "Property").

The Trust provided, in pertinent part the following:

The Trustees shall have the absolute and complete mastery and power over the property of this Trust as if absolute owners thereof . . .

The income of the Trust, or the use of the Trust property, or such part thereof as the Trustees may deem advisable and such part or parts of the principal of the Trust as the Trustees may deem advisable shall from time to time at such intervals as the Trustees may deem advisable be paid or used and expended for the support, maintenance, or other needs of the Donors' children, MICHAEL HAIG AKILLIAN, of Bedford, Massachusetts and DAVID GEORGE AKILLIAN, of Arlington, said [sic] Massachusetts, the beneficiaries hereof, in such amounts as the Trustees shall deem proper and advisable.

This Trust shall terminate upon the death of the last to die of the Co-Trustees. Upon termination, all assets of the Trust and income, if any, undistributed at the time, shall be distributed in equal shares, share and share alike, to the said beneficiaries, or to the survivor of them.

*No beneficiary of this Trust shall have the power to anticipate*, assign, transfer, alienate or in any way pledge or hypothecate *his* or her *respective interest* in this Trust, or any part thereof, and any attempt so to do shall be of no effect. No beneficiary shall have such an interest in the Trust Fund that may be attached or be subject to levy for his or her private or particular debt.

The beneficiaries shall have no legal title in the Trust property itself, real or personal, or right to a division or partition of the same or for an accounting, or to direct the Trustees in the administration of this Trust.

(emphasis supplied).

George Akillian died on August 28, 1991, leaving Celia Akillian as the sole trustee of the Trust. Celia Akillian died on March 4, 2006. As of August 1, 2008, the beneficiaries of the Trust were the Debtor and Michael. Pursuant to its terms, the Trust terminated on March 4, 2006.

The Debtor and Michael filed a complaint in the Land Court for the issuance of a

new certificate of title.  On July 24, 2008, the Land Court canceled the certificate of title in the name of the Celia and Red Realty Trust and ordered the entry of a new certificate of title for the Property in the names of the Debtor and Michael.  On August 1, 2008, the Debtor and Michael sold the Property for a stated consideration of $505,500.00 (the "Closing").  The net proceeds from the sale of the Property, following payment to Watertown Savings Bank in the sum of $142,186.39 and other closing costs, totaled $330,996.43.  The net proceeds from the sale, if divided equally between the Debtor and Michael would have resulted in each receiving $165,498.21.  Instead, Michael received $236,640.67 from the sale proceeds, while the Debtor received only $94,355.76. Accordingly, Michael received $71,142.45 more than the Debtor.

At the time the Debtor and Michael received proceeds from the sale of the Property, the Debtor was insolvent or he was rendered insolvent as a result of receiving less than $165,498.21.  In Amended Schedules of Assets and Liabilities, the Debtor disclosed, on Schedule B-Personal Property, assets totaling $74,756, which sum included a term life insurance policy of $50,000 with "no cash value."  On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed five creditors with claims totaling $69,859.72. Excluding the $50,000 ascribed to the life insurance policy which had no value, the Debtor's outstanding obligations of approximately $70,000 exceeded the value of his assets by approximately $45,000.

The Debtor certified in his Statement of Financial Affairs that he did not make any gifts or transfers in the year prior to filing. Furthermore, the Debtor certified that he did not

4

close any financial accounts within one year prior to filing.

Prior to her passing, the Debtor lived with his mother at the Property.   In an affidavit, he stated that in 2001, his mother, who was the sole surviving trustee of the Trust at the time, obtained a mortgage from Watertown Savings Bank in the amount of $80,000 secured by the Property.   The Debtor stated that the proceeds of that mortgage "were in the form of a bank check which was made payable to him."   In 2004, his mother refinanced the 2001 mortgage and obtained a mortgage in the sum of $150,000, of which approximately $80,000 was used to satisfy the 2001 mortgage.   The Debtor stated that he received the net proceeds of the 2004 refinancing which he used "for various purposes."   At the time of the Closing in 2008, Watertown Savings Bank was owed $142,186.39 and that sum was paid to it to satisfy the mortgage on the Property before the balance of the sales proceeds was divided between the brothers.

Michael testified at a deposition conducted on June 8, 2010, the transcript of which the Trustee attached to his Motion for Summary Judgment, that he learned that his mother, on behalf of the Debtor, had obtained mortgages on the Property in telephone conversations with his mother and the Debtor.   He stated:

> . . . David had said he had a lot of financial need and that he wanted to take some of the assets out of the house, his share of the house, and use it sooner because he needed it sooner and she acquiesced twice.

> And then we also agreed that when the time came to sell the house, that he would have already withdrawn that amount of money so whatever it was would come from his share of the sale of the house.

<div align="center">***</div>

<div align="center">5</div>

> . . . [B]asically he [the Debtor] was asking my mother to withdraw - - to get
> his hands on assets that were actually future assets. He said, I want to take
> some of the money that's going to be my share of the house and use it now
> because I need it now, and I think it was with some reluctance that she
> agreed to do that.

The oral agreement among Celia Akillian, the Debtor and Michael with respect to the distribution of proceeds from the sale of the Property was not reduced to a writing.

## III. POSITIONS OF THE PARTIES

The Trustee maintains that the difference between what Michael received at the Closing ($236,640.67) and what the Debtor received ($94,355.76), namely $71,142.45, was a constructively fraudulent transfer because Michael did not provide any consideration for receipt of that sum. The Defendant maintains that his receipt of the $71,142.45, in effect, was a "true-up" of the value of his one-half share of the proceeds from the sale of the Property, to account for the Debtor's receipt of mortgage proceeds while the Property was held in the Trust and to implement the intent of Celia and George Akillian that their sons "share and share alike." In other words, Michael maintains that, because he received no benefit from the mortgages placed on the Property, the proceeds from the sale of the Property were properly adjusted at the Closing to reflect the benefit received by the Debtor in advance of the death of Celia Akillian and the termination of the Trust. He adds that he received no "transfer" of property of the Debtor and that he is not a creditor of the Debtor.

## IV. DISCUSSION

### A. Summary Judgment Standard

This Court has set forth the summary judgment standard in numerous decisions.

The United States Court of Appeals for the First Circuit has stated:

> It is apodictic that summary judgment should be bestowed only when no
> genuine issue of material fact exists and the movant has successfully
> demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P.
> 56(c). As to issues on which the movant, at trial, would be obliged to carry
> the burden of proof, he initially must proffer materials of evidentiary or
> quasi-evidentiary quality-say, affidavits or depositions-that support his
> position. When the summary judgment record is complete, all reasonable
> inferences from the facts must be drawn in the manner most favorable to the
> nonmovant. This means, of course, that summary judgment is inappropriate
> if inferences are necessary for the judgment and those inferences are not
> mandated by the record. . . .

In re Kurak, 409 B.R. 259, 263-64 (Bankr. D. Mass. 2009), *aff'd* South Point Inc. v. Agin, 433

B.R. 52 (D. Mass. 2010) (quoting Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st

Cir.1994)) (citations omitted, footnote omitted).

    B. <u>Applicable Law - Count I</u>

    Section 548(a) provides in pertinent part:

> (a)(1) The trustee may avoid any *transfer* . . . of an interest of the debtor in
> property, . . . incurred by the debtor, that was made or incurred on or within
> 2 years before the date of the filing of the petition, if the debtor voluntarily
> or involuntarily– . . .
>
> > (B)(i) received less than a reasonably equivalent value in
> > exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or
> > such obligation was incurred, or became insolvent as a result
> > of such transfer or obligation . . . .

11 U.S.C. § 548(a)((1)(B) (emphasis supplied).  The term "transfer" means, among other

things, "each mode, direct or indirect, absolute or conditional, voluntary or involuntary,

of disposing of or parting with– (i) property; or (ii) an interest in property."  11 U.S.C. §

101(54)(D).

To resolve the issue of what property or interest in property the Debtor may have transferred to Michael at the Closing, the Court must look beyond the terms of the Trust. The provisions of the Trust authorized the trustees to dispose of property as they wished, and that power would have permitted Celia Akillian to transfer the proceeds of mortgages she obtained on the Property to the Debtor. Moreover, the Trust terminated pursuant to its terms upon the death of Celia Akillian.

Following the termination of the Trust, the Debtor and Michael took title to the Property as tenants in common. Both parties reference Mass. Gen. Laws ch. 184, § 7, which provides:

> A conveyance or devise of land to two or more persons or to husband and wife, except a mortgage or a devise or conveyance in trust, shall create an estate in common and not in joint tenancy, unless it is expressed in such conveyance or devise that the grantees or devisees shall take jointly, or as joint tenants, or in joint tenancy, or to them and the survivor of them, or unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy. A devise of land to a person and his spouse shall, if the instrument creating the devise expressly so states, vest in the devisees a tenancy by the entirety.

Mass. Gen. Laws ch. 184, § 7. According to the court in D'Ercole v. D'Ercole, 407 F.Supp. 1377 (D. Mass. 1976),

> The tenancy in common is the holding of land "by several and distinct titles."
>
> > Each tenant owns an undivided fraction, being entitled to an interest in every inch of the property. With respect to third persons the entire tenancy constitutes a single entity. There is no right of survivorship as between tenants in common. Upon the death of a tenant in common his undivided interest in the

> property is transferred to his heirs or devisees, subject to liens,
> claims and dower.

> 28 Mass. Practice (Park) § 125, at 119-120 (Footnotes omitted). There is a
> presumption in favor of the tenancy in common over the joint tenancy as a
> matter of construction in Massachusetts. Each tenant in common has a right
> to free usage of the whole parcel and may freely convey out his share of the
> property to a third party, who then becomes a tenant in common in relation
> to the remaining cotenants.

407 F.Supp. at 1380. Under Massachusetts law, when the Debtor and his brother obtained

title to the Property, each received an undivided one-half interest in the Property by

operation of law. The United States Court of Appeals for the First Circuit has observed, in

the context of ownership of condemned land, the following:

> Massachusetts law clearly holds that a cotenant cannot be allotted more than
> his or her share of the compensation awarded in a condemnation proceeding.
> Barnes v. City of Springfield, 268 Mass. 497, 168 N.E. 78 (1929), *cert. denied*,
> 281 U.S. 732, 50 S.Ct. 246, 74 L.Ed. 1148 (1930); Merrill v. Inhabitants of
> Berkshire, 11 Pick. 269 (Mass.1831). *See also* Whitcher v. Town of Benton, 48
> N.H. 157 (1868). In Barnes, the Massachusetts Supreme Judicial Court held
> that the trial judge had erred in allowing a jury to allot an entire
> condemnation award to one cotenant, stating, "[t]he nature of the title of each
> owner of one undivided half interest in a parcel of real estate is such that the
> value of the interest of either as [a] matter of law cannot exceed one half the
> value of the whole." 268 Mass. at 514, 168 N.E. at 87.

U.S. v. 79.31 Acres of Land, 717 F.2d 646, 648 (1st Cir. 1983).

In the present case, upon sale of the Property, the Debtor and Michael were entitled

to share in the net proceeds of $330,996.43 due to their status as tenants in common. There

was no written agreement altering their rights as tenants in common, and Michael has not

pointed to any contributions that he made to the Debtor *during the cotenancy* which would

entitle him to more than one-half of the proceeds. Thus, the Debtor had a property interest

9

in one-half the proceeds from the sale of the Property as a co-tenant.  In other words, because the Trust had terminated, the intention of Celia and George Akillian that the Debtor and Michael "share and share alike" was replaced by their rights and obligations to each other as tenants in common.  The rights and obligations of the brothers as tenants in common did not include an obligation on the part of the Debtor, moral or otherwise, to compensate Michael for his mother's decision to mortgage the Property and convey the mortgage proceeds to the Debtor before the brothers became owners of the Property as tenants in common.  When the Debtor and Michael authorized the Closing attorney to adjust their existing rights to an equal division of the net sales proceeds, the Debtor made a gift to his brother by transferring his interest in the sale proceeds to him in the sum of $71,142.45 to account for his receipt of mortgage proceeds when the Property was owned by the Celia and Red Realty Trust.

Neither the Trust nor the Debtor as a tenant in common was obligated legally to Michael to compensate him for the Debtor's use of mortgage proceeds obtained for his benefit by Celia Akillian.  Michael's reliance upon <u>Voner v. Billingham (In re Latini)</u>, 334 B.R. 338 (Bankr. D. Mass. 2005), is misplaced because in that case the plaintiff was seeking a right of contribution for his predecessor's payment of an excess share of expenses while the property was held in a tenancy in common.

There was no evidence of a written agreement among the Debtor, Michael and their mother about a true-up resulting from the mortgage proceeds obtained by the Debtor, an agreement which contravened an express term of the Trust, namely that "[n]o beneficiary

10

shall have the power to anticipate . . his . . . respective interest in this Trust." Because any

verbal agreement to alter the terms of the Trust or affect the distribution of the proceeds

from the sale of the Property would be subject to the Statue of Frauds, this Court finds that

such an agreement, if made, would not be enforceable against the Trustee. *See* Mass. Gen.

Laws ch. 259, §§ 1, 5A.

> Section 5A of chapter 259 provides in pertinent part:
>
> No agreement to make a will of real or personal property or codicil thereto
> or to make a bequest or devise, or to revoke or not to revoke a will, codicil,
> bequest or devise, . . .  or any other agreement relative to making or not
> making a will, codicil, bequest or devise, shall be binding unless such
> agreement is in writing and signed by the person whose executor or
> administrator is sought to be charged, or by some person duly authorized
> thereunto by him in writing.

Mass. Gen. Laws ch. 259, § 5A.  Accordingly, the agreement amount the Debtor, Michael

and Celia Akillian did not survive the termination of the Trust.

> Section 1 of chapter 259 provides in pertinent part:
>
> No action shall be brought: . . .
>
> Fourth, Upon a contract for the sale of lands, tenements or hereditaments or
> of any interest in or concerning them . . .
>
> Unless the promise, contract or agreement upon which such action is
> brought, or some memorandum or note thereof, is in writing and signed by
> the party to be charged therewith or by some person thereunto by him
> lawfully authorized.

Mass. Gen. Laws ch. 259, § 1.  Pursuant to the Statute of Frauds, any contract between the

Debtor and Michael pertaining to the sale of the hereditament, i.e., the Property, whereby

the brothers agreed to a "true-up" was unenforceable because it was not reduced to a

11

writing.

The Court finds based upon the foregoing that the absence of a written agreement prevents the enforcement of any oral agreement among the Debtor, Michael and their mother. At the time of the telephone conversation regarding the "true-up," Celia Akillian had the capacity to amend the Trust to alter the division of the proceeds from the sale of the Property upon her death. Similarly, the Debtor and Michael could have entered into a written contract as to the distribution of the proceeds from the sale of the Property before or simultaneously with the execution of the deed to the Property to them as tenants in common or at the Closing when they conveyed the Property to third parties. They did not do so.

Although the Debtor, Michael and Celia Akillian did not execute a writing evidencing their purported oral agreement, the Debtor could have disclaimed a portion of his interest in his parents' property which was due to him under the Trust or by the laws of intestacy by executing a disclaimer. Pursuant to Mass. Gen. Laws ch. 191A, § 8, however, such a disclaimer would have to have been in writing. Section 8 provides:

The right to disclaim an interest in property shall be barred by:--

1. assignment, conveyance, encumbrance, pledge, transfer or other disposition of such interest, or any contract therefor, by the beneficiary or sale or other disposition of such interest pursuant to judicial process made before the beneficiary has disclaimed such interest as herein provided;

2. insolvency of the beneficiary at the time of attempted disclaimer. For purposes of this paragraph only, sections one to four, inclusive, and sections eight to thirteen, inclusive, of

12

chapter one hundred and nine A shall be applicable as if the disclaimer were a conveyance;

3. a written waiver of the right to disclaim such interest pursuant to the provisions of this chapter, signed by the beneficiary, the duly appointed guardian or conservator of a beneficiary under a legal disability, or the legal representative of a deceased beneficiary's estate;

4. acceptance of such interest by the beneficiary; if the beneficiary, having knowledge of the existence of such interest, receives without objection a benefit from such interest, such receipt shall be deemed to constitute acceptance of such interest.

Mass. Gen. Laws ch. 191A, § 8.  Because the Defendant does not contest the Debtor's

insolvency, any attempt by the Debtor to have disclaimed his interest in the proceeds of the

sale of the Property, particularly after the recordation of the deed to the Property, would

have been ineffective, even if the disclaimer were in writing.

Although no formalities are required to decline or refuse a gift of property located in Massachusetts, in order to avoid liability for a gift tax a gift must be disclaimed in accordance with Massachusetts law as well as with the Internal Revenue Code.

Provided a property interest has not been accepted or transferred, a right to receive it may be disclaimed by a beneficiary within nine months of the event finally determining that the beneficiary's interest is indefeasibly vested. A disclaimer must be in writing and served on the person having custody of the property. If this person is a fiduciary of an estate, a copy of the disclaimer must be filed with the probate court. In all cases involving real estate, a copy of a disclaimer must be filed in the appropriate registry of deeds.

Any interest may be disclaimed, including an interest as a joint tenant or a tenant by the entirety; the disclaimer must be made within nine months of the death of the other tenant.

When a disclaimer is filed, title to the property passes as if a beneficiary had

13

died immediately prior to the event determining that the beneficiary's interest is indefeasibly vested, "unless such a result would substantially impair the provisions or intent of any instrument, statute or rule of law relating to the interest in property being disclaimed, except that the property may never vest in the disclaiming beneficiary." . . . .

Arthur L. Eno, Jr. and William V. Hovey, 28 Massachusetts Practice Series, § 16.17 (4th ed. & Supp. 2010-2011) (footnotes omitted).   In the absence of a written agreement among the Debtor, Michael and their mother, the only way the Debtor could have effectuated a "true-up" whereby he compensated his brother for monies obtained from the Property during Celia Akillian's lifetime, was to have executed a written disclaimer so that his interest in the Property, at least to the extent of $71,142.45 never vested in him as a beneficiary of the Trust.  *See* Mass. Gen. Laws ch. 191A, §§ 4 ("A disclaimer shall be in writing, shall describe the interest in property being disclaimed, shall declare the disclaimer and the extent thereof, shall be clear and unequivocal, and shall be signed by the beneficiary . . . ."). In addition to being in writing, the disclaimer would have had to have been filed in accordance with Mass. Gen. Laws. Ch. 191A, § 5, which provides, in pertinent part:

If the property, an interest in which is being disclaimed, is real property, the disclaimer shall be acknowledged in the manner provided for deeds of real property. The disclaimer shall not be valid as against any person, except the beneficiary, the heirs and devisees of the beneficiary, and any person, estate, trust, corporation or other legal entity having actual notice of the disclaimer, unless the original thereof or an attested copy thereof if the original is required to be filed with a probate court, is recorded in the registry of deeds for the county or district in which the real property is situated or, in the case of registered real property, is filed and registered in the office of the assistant recorder for the registry district in which the real property is located.

Mass. Gen. Laws ch. 191A, § 5.

14

The Debtor did not effectively disclaim his entitlement to the proceeds from the sale of Property before taking title to it as a tenant in common with Michael. The Court finds that the Trustee has satisfied his burden of establishing the absence of a genuine issue of material fact as to Count I. The Debtor transferred $71,142.45 to Michael for no consideration while he was insolvent. The Debtor's transfer, through the auspices of the Closing Agent, of $71,142.45 to his brother is an avoidable constructively fraudulent transfer.

C. Applicable Law -Count II

To prevail on Count II, through which the Trustee seeks to avoid the payment of $71,142.45 to Michael as a preference, the Trustee would have to establish all the elements of a preference, including Michael's status as a creditor of the Debtor. Based upon the undisputed facts, the Court finds that Michael was not a creditor of the Debtor.[1] The trustees of the Trust, the parents of Michael and the Debtor, did not owe Michael money. The Debtor did not incur a debt to Michael during the period of time when the brothers held title to the Property as tenants in common. Any contractual obligation arising out of the parties' telephone conversation was unenforceable. Accordingly, the Court finds that the Trustee has not established that Michael was a creditor at the time he received $71,142.45 at the Closing, an essential element of a preference claim.

---

[1] If the Court were to assume that Michael held an antecedent debt, Michael's receipt of $71,142.45 would constitute a preferential transfer. Michael is an insider of the Debtor and received $71,142.45 within one year of the commencement of the Debtor's Chapter 7 case. *See* 11 U.S.C. §§ 101(31)(A)(I) and 547(b). Furthermore, Michael failed to plead any defenses to a preferential transfer claim. *See* U.S.C. § 547(c).

**V. CONCLUSION**

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion for Summary Judgment as to Count I and denying the Trustee's Motion for Summary Judgment as to Count II.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 13, 2011